CHRISTOPHER S. BRIGGS *v.* JONAH TITUS and Wife.

Since the Revision of the Statutes, in 1857, the consent of a wife, *in writing*, is
necessary, to enable her husband to subject her land to a lien under the me-
chanics' lien law, for the work and materials supplied in building upon it.

Where such work is done and materials are furnished, not under any special
contract as to what is to be done or furnished, or at what price or time of pay-
ment, but from time to time as directed or requested, payments on account for
the same, from time to time made without special application by either party
at the time of payment, will be applied by the court to the charges in the
account in the order of time in which they accrued, for the purpose of ascer-
taining what remained due at any particular time, and for what, proceedings
are to be commenced within any particular time under the requirements of the
mechanics' lien law.

Where the respondents to a petition under the mechanics' lien law are husband
and wife, they cannot be admitted to testify before the master, except in such
cases as like parties can testify at common law.

THE petitioner, by his petition under the mechanics' lien law,
represented, that Jonah Titus and Waity, his wife, were indebted
to him in the sum of $972.37, for labor and materials furnished
by him to them, at the request of them, and each of them, in the
construction of certain buildings upon a lot of land owned by the
said Waity in fee, and in which said Jonah had an interest, as
tenant by the curtesy initiate ; and claimed, that a lien had
attached to the respective interests of the said Jonah and Waity,
in said lot, for the payment of the amount of his said account for
labor and materials.    Upon a hearing at the last term, the court
having come to a conclusion that a lien had attached in favor of
the petitioner, referred the matter to a master, to report the
amount of the account and the nature of the lien, for the further
action and decree of the court thereon.    The master reported,
that the work and materials charged in the petitioner's account
were furnished in construction of a house and barn on a lot of
land then owned by the said Waity Titus, in fee, and in which
her said husband had an interest by way of curtesy ; that the

work was done and the materials furnished at the request of the said Waity, personally, and that she advised with, and directed the petitioner, as the work proceeded; that her husband assented to and agreed to the making of the contract and requests by his wife, and to the performance of the work, and the furnishing of the materials therefor, but that the said Waity had not made any request or contract *in writing*, nor consented to or agreed *in writing*, that the said improvements should be made. The respondents claiming, that upon this state of facts no lien could be created upon the interest of the wife, now excepted to the report of the master, that he had found that a lien had attached thereon, upon the ground; that no lien could be created, under the law, upon the estate of a married woman, but by her assent *in writing*.

The other exceptions to the master's report are, with the rulings of the court thereon, set forth in their opinion below.

*James Tillinghast, for the petitioner.*

*Peck, for the respondents.*

Brayton, J. The act, as it stood before the revision of the Statutes, in 1857, provided, that "when any building was erected or repaired by contract with, or at the request of the owner thereof, such owner being at the time the owner of the land on which the same is," the building, together with the land, shall be subject to a lien for the work done and materials furnished by the person contracted with or requested. In the case of *Bliss & Logan* v. *Patten and wife and another*, 5 R. I. Rep. 376, which arose under that act, it was proved, that the husband had requested the improvements to be made on the land owned in fee by the wife; and it was sought to charge her estate, by proving that the wife joined with the husband in the request for the performance of the work, and agreed to it. Parol evidence was admitted for the purpose of proving the concurrence of the wife, and upon exceptions to the ruling of the Judge admitting the evidence, it was held, that a lien might be created upon the estate of a married woman without writing, and that it was sufficient that husband and wife joined in the contract or request by *parol*.

Upon the revision of the Statutes, in 1857, an amendment, then made, rendered it necessary, that the consent of the wife to any

Briggs *v.* Titus and wife.

contract or request of the husband should be in writing. The husband " of such owner," *i. e.*, the owner of the building, who is at the time the owner of the land also, may, " with the consent of his wife in writing," subject the land to a lien for the work and materials supplied for the building. Rev. St. Ch. 150, § 1. This provision would be idle, if a lien could be created otherwise than by such consent, so given. The consent which alone would create the lien on the wife's estate never having been given, these proceedings, for the purpose of enforcing one against *her* estate, cannot be sustained.

The respondents except to the report of the master, that he had found, upon the evidence, that the work done upon the house, and the materials furnished therefor, were done and furnished under *several* contracts or requests, and not under one only; and that the lien therefor was not lost for all the work and materials for that house, by failing to file his account within six months after the commencement of the work, and of furnishing materials. None of the work was done or materials furnished under a special contract. There were no terms agreed upon. It is quite clear, from the evidence, that no prices were fixed for the work or materials, nor time of payment; nor was there any promise of the petitioner to do any particular amount of work, or to furnish any definite quantity or kinds of materials. There was a request by the respondent, Mrs. Titus, to have a house built upon her land, and to employ the petitioner, by the day, to work upon it. He consented to do so. She selected a plan of house suggested by him; she directed, from time to time, what she would have done, and at times, what other persons she would have employed upon the work. He was subject, at all times, to her orders; and was at liberty, at any time to leave the work, and in doing so would violate no contract or promise. He did such work as she, from time to time, directed; and furnished such materials as that work required, or as she desired. It cannot be said that the house was built, therefore, under an entire contract, as the respondents' counsel claim; and the master was not in error in finding, that the work and materials charged were not furnished under such a contract.

The petitioner had done work and furnished materials, prior

to the 27th day of November, 1861, to the amount of $400. Not having filed his account within six months after that date, his lien therefor was lost. But the respondents made payment on account generally. The sum of $100 was paid on the 25th day of November, 1861; and afterwards, and at different times, further sums amounting to $203.25. The master holds that these payments should be applied to the charges in the petitioner's account, in the order of time in which they accrued. The respondents except to this ruling of the master. The rule with regard to open or current accounts is, that the payments, made from time to time, shall be applied to the earliest items in the account. 1 Am. Lead. Cases, 291, and cases cited. This would be the rule, when the debtor omits, at the time of payment, to direct the application, and the creditor, whose right it becomes on such failure to make such application as he pleases, also omits to apply it. It does not appear that this debtor, at the time of payment, directed any application of the sums paid. The ruling of the master upon this matter is well supported.

It is contended, that certain findings of the master are erroneous, and against the evidence before him. *First,* that he found that Jonah Titus, the husband, assented to the performance of the labor and the furnishing of the materials charged. This finding of the master is fully sustained by the evidence reported. *Second,* that the master found, that there was no contract between the parties, by which it was agreed that Briggs, the petitioner, should receive the sum of $300 in cash, in part of his account, and take a mortgage of the estate, as security for the residue. As to this, we do not feel warranted in saying that it is against the evidence submitted to the master.

The testimony of the respondents was properly rejected by the master; and because, at common law, they could not, being parties, be admitted to testify, and are excepted from the statute admitting parties to be witnesses, and can no more be allowed to testify for or against each other, since the statute, than before its enactment.

Assuming that the amount of the petitioner's account is correctly determined, and that he has a lien upon the estate described, for the whole, it would not be material to state separately

the amount of each lien, if they are created by different contracts or different requests, in order to determine whether all, or only a portion of, the estate of Jonah Titus should be sold for payment. The amount to be raised by sale is the same, whether it arise from one lien or more. It will probably require a sale of the whole, as the master has determined.