ASA FRANCIS & others *vs.* MARIA F. SAYLES.

The interest of a lessor is not subject to a mechanics' lien under the Gen. Sts. *c.* 150, for work done in altering the demised building by order of an undertenant of the lessee, although the lease contains a covenant by the lessee to make certain other alterations, and to keep the building in repair, and although the alterations made are apparent and the lessor lives in the immediate neighborhood.

PETITION to enforce a mechanics' lien. On January 1, 1868, the respondent, being owner in fee of an estate on Tremont Street in Boston, demised the premises to Edmund G. Lucas for the term of twenty years, by lease recorded in the registry of deeds. The lease contained no covenant against underletting or assignment, and did contain a covenant by which Lucas

agreed that " he will immediately proceed to build out upon the rear part of the lot an addition to the main building at least one story high above the ground, and at seasonable times to put the present building in repair, all at his own expense and in good, workmanlike manner, and at a cost of not less than $4500."

On February 29, 1868, Lucas underlet the premises for the term of ten years to Alexander C. Felton, who, soon after taking this underlease, began to convert the lower floor of the building into an apothecary's shop, and employed a firm of carpenters to do, or to procure to be done, the mechanics' work; and the petitioners performed the labor, for which the lien was claimed, as journeymen. None of the labor was performed on the addition to the main building mentioned in the lease from the respondent to Lucas; and no notice was given to the respondent of the alterations and additions upon which the labor was performed; but it was apparent to any one passing the building that the lower floor was being converted into a shop; and the respondent was living in the immediate vicinity. No notice was given to the petitioners by the respondent to prevent the attachment of a lien, but no consent was given by her to the alterations and additions upon which the labor was performed, or to the underlease, unless such consent might be inferred from her lease to Lucas, and from the fact of her living in the immediate vicinity of the estate, and giving no notice to the petitioners to prevent an attachment of liens. On May 27, 1868, each of the petitioners seasonably filed a certificate of his intention to claim a lien. The order of notice issued on the filing of the petition was not served on Lucas or Felton.

On the above facts, which were agreed, judgment was ordered in the superior court for the respondent, and the petitioners appealed.

*A. Russ & G. A. Bruce,* for the petitioners, cited *Clark* v. *Kingsley,* 8 Allen, 543; *Mulrey* v. *Barrow,* 11 Allen, 152; *Parker* v. *Bell,* 7 Gray, 429–431; *Kirby* v. *Tead,* 13 Met. 149, 156 *Howard* v. *Veazie,* 3 Gray, 233, 236; *Leiby* v. *Wilson,* 40 Penn. State, 63; *Belding* v. *Cushing,* 1 Gray, 576.

*C. B. Goodrich & C. H. B. Snow,* for the respondent.

AMES, J.   The St. of 1819, *c.* 156, which appears to have been the first of many which have been enacted in this Commonwealth on the same subject, provided that every person who should, by contract in writing with the owner of any piece of land, furnish labor or materials for erecting or repairing a building thereon, should have a lien upon the land for the amount due for such labor or materials.   It was also provided (see Rev. Sts. *c.* 117, § 26) that the person who procured the work to be done should be considered as the owner for the purposes of the process, and to the extent of his right and interest, though he should have an estate for life only, or any other estate less than a fee simple, and that the lien should bind his whole estate and interest in the land.   The law now in force (Gen. Sts. *c.* 150) has done much to extend the remedy to a large class of cases, and to make it more convenient of enforcement.   It is no·longer restricted to the case of written contracts, and it is sufficient to show that a debt is due for labor or materials furnished by virtue of an agreement with, or by consent of, the owner of the building or structure, or any person having authority from, or rightfully acting for, such owner, in procuring or furnishing the labor or materials.   But there is no substantial change in the mode of proceeding in order to enforce the lien, and, although the thirty-third section of the present statute is not expressed in the same language as the twenty-sixth section of the Rev. Sts. *c.* 117, we do not think it was intended to produce any radical or substantial change of the law in relation to that particular subject matter.

The order of notice issued upon the filing of the present petition in court has been served upon the lessor only.   No other party has been summoned in to answer, and apparently the petitioners do not expect or intend in the suit to enforce any claim against the estate of the lessee in the land and building, although by the terms of the statute his estate is expressly made liable, and he was the party who undertook to cause the building to be erected or repaired.   Does the law authorize the holder of such a lien to pass over, and leave wholly unmolested and

untouched, the estate of the lessee, which may be for a long term of years, or that of a tenant by the curtesy, for example which is for life, and at his mere will and choice to throw the whole burden of expensive improvements upon the reversioner, and enforce the claim by a sale of the reversion ? If so, it is easy to see that the position of landowners who have given what are called building-leases may be subject to great embarrassment. It may be that the right of the reversioner is very remote, and he may be wholly unable to regulate or prevent the operations of the intermediate tenant. He may have a mere contingent remainder, in which the rights of persons not yet in being are implicated. But we do not understand that the law gives to the holder of the lien any such arbitrary and unreasonable option.

It is very clear that, as the law stood under the Revised Statutes, the person spoken of as " the owner of the land " was the person who made the original building contract. He is variously spoken of in the chapter on the subject, as the owner, the contractor, the debtor, the party who procures the work to be done; " by which various designations the same person is intended. Such is the party intended to be the defendant and to be summoned in the suit." *Howard* v. *Robinson*, 5 Cush. 119, 122. The statute now in force, instead of speaking of the owner of the land, uses the phrase " owner of the building or structure." It is no longer needful to show that he made the contract, but it must still appear that he agreed or consented, or that some person having authority from or rightfully acting for him, agreed or consented. He is still the person variously spoken of in the statute, as the contractor, the debtor, and the person for whom the work is done. The thirty-third section of the Gen. Sts. *c.* 150, very plainly shows that the person for whom the work is done, having an estate for life only, or other estate " less than a fee simple," is the person of whom it is said " the creditor may cause the right of redemption, or whatever other right or estate the owner had in the property, to be sold and applied to the discharge of his debt according to the provisions of this chapter." He is the party intended to be the defendant, and to be sum-

moned in the suit. It would be a great stretch of construction to say that the lessor, whose demise really has the effect of an alienation so long as the term lasts, and who has parted with the control of the property during that time, agrees or consents, or authorizes any one to consent for her, to the contract under which the petitioners claim. The case finds that none of the labor was performed on the addition to the main building for which the lease to Lucas provided. The most that can be said would be, that she did not object to proceedings by her lessees, which she may have had no power to prevent, if she had the wish to do so.

It may be said that, although an estate less than a fee simple may be a long term of years, yet it may also be a very short term of years or months. But we may well suppose that the legislature assumed that a tenant for a short term would not be likely to make improvements for the benefit of the reversion at his own expense, and that there was no practical necessity for a statute provision to meet such a contingency. They may also have concluded that there was no hardship, under the circumstances, in leaving it to the carpenter or mason to inform himself as to the nature of the interest of the party in the estate upon which he furnishes labor and materials. But however that may be, we are clearly of the opinion that the suits of these petitioners cannot be maintained against the lessor, which is all that we are called upon to decide. . *Petition dismissed.*